The STATE of Ohio, Appellee,

v.

KOREN, Appellant.

[Cite as *State v. Koren* (1995), 100 Ohio App.3d 358.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 93–L–092.

Decided Jan. 3, 1995.

*Robert J. Cochran* and *Ariana E. Tarighati,* Lake County Assistant Prosecuting Attorneys, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *Charles R. Grieshammer,* Assistant Public Defender, for appellant.

JOSEPH E. MAHONEY, Judge.

Defendant-appellant, Paul J. Koren, appeals his conviction for aggravated robbery, a violation of R.C. 2911.02, which included a firearm specification.

On November 18, 1992, appellant was indicted on one count of aggravated robbery for robbing the Play-A-Way Lounge, a small bar/restaurant located in Wickliffe, Ohio. On March 19, 1993, appellant filed a motion to suppress the admission of a .25 caliber semi-automatic pistol into evidence. The pistol was seized by the Federal Bureau of Investigation ("FBI") when appellant was arrested on an outstanding federal bank robbery warrant. The trial court denied appellant's motion on April 12, 1993.

Appellant was tried before a jury, which returned a guilty verdict on April 23, 1993. The jury found appellant guilty of aggravated robbery, and it also found that appellant had a firearm on or about his person or under his control while committing the offense.

On April 29, 1993, the trial court sentenced appellant to an indefinite term of imprisonment of eight to twenty-five years with an additional three years of imprisonment for the firearm specification.

Appellant has filed a timely appeal and now raises the following assignments of error:

"1. The trial court erred to the prejudice of the defendant-appellant when it overruled his motion in limine seeking to preclude the state from introducing into evidence the gun seized as the result of an arrest unrelated to the case at bar.

"2. The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress the evidence obtained by the Federal Bureau of Investigation.

"3. The trial court erred to the prejudice of the defendant-appellant in convicting him against the manifest weight of the evidence."

For logistical purposes, we will address the first and second assignments of error in reverse order. In the second assignment of error, appellant argues that evidence of the gun should have been suppressed because it was obtained as a result of an illegal search.

First, we need to determine if the gun was legally obtained by the agents. If it was legally obtained, then we need to determine whether it was properly admitted as the weapon used in the robbery herein.

The search for the gun was conducted after appellant was apprehended. The record indicates that on October 16, 1992, FBI agents had the house where appellant was arrested under surveillance. Upon seeing appellant enter the

residence, the agents on surveillance called Agent Lloyd Buck to serve appellant with an outstanding federal bank robbery warrant.

As Hope Malloy, the woman who lived in the house, exited the house, Agent Buck and two other agents entered the home. Agent Buck described the home as twenty-five feet long and twenty feet wide with very small rooms. There were four rooms in the house: a kitchen, a living room, a bedroom, and a bathroom. The agents fanned out so that they could get to all of the rooms in the house and had covered three rooms when appellant came out of the bedroom with his hands on his head. Up until that point, the agents had not been in the bedroom.

At that time, Agent Buck turned appellant to face the kitchen table and began to orally advise him of his rights. The three agents surrounded appellant. One of the other agents began patting appellant for weapons. The pat-down search revealed a bag with .25 semi-automatic caliber bullets in it. Agent Buck then asked appellant, "Where's the gun that goes with these bullets?" Appellant looked over his shoulder and shrugged. Agent Buck interpreted this action to mean that the gun was in the bedroom.

Agent Buck then turned around and took, at most, two steps and saw the gun lying on a pile of clothing next to the dresser. Agent Buck picked up the gun, put it in his pocket, and returned to continue handcuffing appellant. Agent Buck testified that he could easily see the gun before he took the two steps. Agent Buck testified that he seized the gun out of concern for the agents' safety.

Appellant argues that the agents exceeded their authority in searching for evidence in a room other than the one in which he was arrested. Appellant asserts that he was under the exclusive control of the agents when the weapon was discovered in the bedroom and seized. Agent Buck testified that the gun was in the bedroom approximately seven to eight feet from him at the time he asked appellant about the gun. Appellant argues that the gun was not within his "immediate control" and, therefore, the agents exceeded the scope of their authority under *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

Appellee argues that the search was proper under the "public safety" exception set forth in *New York v. Quarles* (1984), 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550, the plain view doctrine, and the exception to the search warrant requirement set forth in *Chimel, supra.*

■ Upon reviewing the foregoing case law, we conclude that the narrow "public safety" exception set forth in *Quarles* does not apply to the facts herein. The *Quarles* case is distinguishable in that the police in *Quarles* were in hot pursuit of a suspect they had reason to believe was armed. The suspect attempted to flee, but was apprehended, arrested, and handcuffed. The suspect

was not given *Miranda* warnings when asked where the gun was. The suspect told the police that the gun was among some empty cartons and nodded in that direction. The police recovered the weapon in one of the cartons.

The facts herein are clearly distinguishable. The agents were in a private residence, appellant had already been apprehended, and he was surrounded by agents. There was no exigency involved and no evidence that members of the public would stumble upon the gun and harm themselves or others. In short, there is no credible evidence which would support the agent's concern for public safety at this point.

Next, appellee contends that the plain view doctrine applies.

In *State v. Buckridge* (June 29, 1990), Lake App. No. 89–L–14–088, unreported, 1990 WL 94829, this court set forth the plain view exception:

"In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities." (Citations omitted.) *Id.* at 4.

Although the gun was lying on top of a pile of clothes, it is clear that Agent Buck did not see the gun until he turned around to specifically look for it. Thus, the discovery of the gun was not inadvertent. Furthermore, the incriminating nature of the evidence was not immediately apparent. Appellant was arrested on an outstanding federal bank robbery warrant.

Ultimately, appellant was charged with unarmed bank robbery in the United States District Court. Appellee maintains that appellant was initially suspected of using some sort of explosive devices in the bank robbery; thus, it was not unreasonable for the agents to assume appellant had other weapons on him besides explosives during the bank robbery and, therefore, the incriminating nature of the gun was immediately apparent.

We disagree. Even if the initial intrusion was lawful, seizure of the gun was not inadvertent, and the incriminating nature of the gun was not immediately apparent; thus, the requirements of the plain view exception are not satisfied.

Finally, appellee contends that the seizure of the gun was justified under *Chimel, supra,* because it was within appellant's immediate control. Again, we disagree.

In *Chimel,* the court stated:

" * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might

seek to use in order to resist arrest or effect his escape. * * * A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.,* 395 U.S. at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

Appellant was in the kitchen, facing the kitchen table, surrounded by agents, and was being handcuffed. There is no evidence that appellant resisted in any way. Appellant had his back to the bedroom where the gun was on a pile of clothes near the dresser. By Agent Buck's own testimony, the gun was in another room at least eight feet away. To say that the gun was "within [appellant's] immediate control" defies logic.

Appellee and the trial court engaged in a great deal of speculation as to how another person in the house could grab the gun and about Hope Malloy returning and using the gun against the agents. However, there is no evidence to support these fears.

The evidence shows that the house had been under surveillance for a period of time, that the agents were familiar with Hope Malloy, who lived there, and certainly were aware of persons entering the house. The agents were not concerned about other people in the house as is evident from their actions once appellant gave himself up. Agent Buck did not question appellant about whether anyone else was in the bedroom, nor did he have the other agents quickly sweep the bedroom for others. He questioned appellant only about the gun. There were simply no facts to support a reasonable belief that the house harbored other people who might be dangerous to the agents.

Based on the foregoing, we conclude that the trial court erred in denying appellant's motion to suppress the evidence of the gun. The second assignment of error is well taken.

In the first assignment of error, appellant contends that the trial court erred in overruling his motion *in limine* seeking to preclude the state from introducing into evidence a gun which was seized as a result of an arrest in an unrelated case. In raising this assignment of error, appellant sets forth two issues for review and argument.

First, appellant argues that the admission of the gun, which was not proven to be the gun used in the robbery herein, violated his constitutionally guaranteed rights to due process and a fair trial. To the extent that appellant argues that the trial court erred in admitting the gun in evidence to establish that appellant had an operable or readily operable "firearm" on or about his person

while perpetrating the robbery, we agree based on our analysis under appellant's second assignment of error. However, the absence of the gun in evidence does not preclude a conviction on the gun specification.

In *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, the Supreme Court of Ohio held that before a defendant can be convicted of a firearm specification pursuant to R.C. 2929.71(A), the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. The court stated that:

"Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet hole, etc.)." *Id.* at 69, 545 N.E.2d at 71.

In *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, a majority of the court modified *Gaines* and held that operability can be demonstrated by testimony of lay witnesses who were in a position to observe the gun and the circumstances surrounding the crime. *Id.* at 209, 551 N.E.2d at 935. The court stated that based on the totality of the circumstances, there was sufficient evidence to prove that the offender possessed a "firearm" pursuant to R.C. 2923.11(B) when the offender announced that he was holding up the store, took out a small gun that was wrapped in a T-shirt, pointed the gun at the clerk and customer, announced that he would use the gun to kill the clerk if he did not give the offender the money, and the clerk and customer were able to describe the gun. Accord *State v. Wilson* (Mar. 31, 1993), Lake App. No. 92–L–073, unreported, 1993 WL 150382.

Since then, the legislature has codified *Murphy* in R.C. 2923.11(B)(2), which provides that:

"When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representation and actions of the individual exercising control of the firearm."

It is on this basis that appellant raises the second issue for review. Appellant argues that appellee has failed to prove beyond a reasonable doubt that a firearm was used in the commission of the robbery and that the firearm was operable or could have been rendered operable. Under either the totality of the circumstances test established in *Murphy* or R.C. 2923.11(B), we agree that there is insufficient evidence to demonstrate that the gun was operable.

Here it is clear that something which appeared to be a gun was used by appellant during the robbery. Both William Philistine, a patron, and Jeanie

Schnell, the bartender, testified that they observed appellant holding a gun, and both were able to describe it.

However, there is no evidence that the gun held by appellant was operable or could readily have been rendered operable at the time of the robbery. There was no evidence that appellant made any verbal threats to use the gun if his orders were not obeyed. Nor was there any evidence or testimony as to gunshots, smell of gunpowder, bullets, or bullet holes. The only evidence to support the gun's operability was the testimony of Agent Buck, who stated that the gun seized by the FBI was loaded and fired at the Lake County firearms range. However, having already determined that the gun was illegally seized, any subsequent testing on the gun was tainted and, therefore, inadmissible also. Thus, absent any evidence tending to establish that the gun used by appellant during the robbery was operable, the firearm specification was not proven beyond a reasonable doubt.

Accordingly, appellant's first assignment of error is well taken.

■ In his third assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.

The standard for reviewing this claim is set forth as follows:

"In reviewing a claim that a jury verdict was against the weight of the evidence, or that the evidence was insufficient, a reviewing court's duty is to review the record to determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt." *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus.

"A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus.

Evidence presented at the trial indicated that appellant allegedly robbed the Play–A–Way Lounge on July 30, 1992, at approximately 2:00 p.m. after the lunch crowd left the bar. Appellant allegedly arrived at 1:00 p.m. and sat at the bar. Schnell waited on appellant and served him two beers. After lunch, the only people in the bar were appellant, Schnell, William Philistine, Dorothy Under, the cook, and Melissa Phillips, the owner.

At approximately 2:00 p.m., appellant ran up to Philistine at the bar and held a gun to his neck. Philistine and Schnell both were able to see the gun, and Philistine saw appellant's finger on the trigger. Appellant called Under out of

the kitchen and had Philistine, Under, and Schnell line up behind the bar. The register was opened upon appellant's order, and he removed approximately $1,000. After taking the money, appellant ordered everyone to go into the kitchen, lie down on the floor, and start counting.

Two and one-half months later, on October 16, 1992, appellant was arrested by the FBI on the outstanding federal bank robbery warrant. Subsequently, Schnell and Philistine identified appellant in a police photographic lineup.

Appellant argues that his conviction was against the manifest weight of the evidence because of the differing testimony regarding his identification, the color of his car, and the lack of physical evidence to support his conviction.

Appellant's argument is not well taken.

"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Since Schnell and Philistine identified appellant as the robber in the photographic lineup and at trial, there was competent, credible evidence to support the jury's finding that appellant was the robber.

Based on the foregoing, appellant's first and second assignments of error are sustained, and appellant's third assignment of error is overruled. The judgment of conviction is reversed on the firearm specification, and the matter is remanded for resentencing consistent with this opinion.

*Judgment accordingly.*

FORD, P.J., and NADER, J., concur.