OPINION
This is a timely appeal from Ronald T. Simpson's ("Appellant") conviction for unlawful possession of a dangerous ordnance in violation of R.C. § 2923.17(A) and subsequent sentence to eight months of imprisonment imposed by the Columbiana County Court of Common Pleas. For the following reasons, we affirm the judgment of the trial court.
On January 4, 2001, the East Palestine Fire Department extinguished two fires, one on the back porch of a residence located at 342 Taggart Street, the other in a pickup truck less than a block away. Police suspected arson and dispatched officers to investigate. Noting footprints leading away from the burned pickup truck, police tracked them to a house located at 543 Taggart Street, where Appellant resided with his parents. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 5-6).
The police secured a warrant for Appellant's arrest and another to search the premises for items related to the arson fires. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 6-8). When the police arrived at 543 Taggart Street, they immediately arrested Appellant for the arson and proceeded to search the house for evidence related to the arson. (March 28, 2001, Hearing on Motion to Suppress, Tr. p. 8).
East Palestine Police Chief Gary Clark testified that after entering the home and restraining Appellant, he confronted Appellant's mother in the livingroom and obtained her consent to search the home for evidence relating to arson. (March 28, 2001, Hearing on Motion to Suppress, Tr. p. 11). During the ensuing search, police seized a sawed-off shotgun and powder cocaine in Appellant's attic bedroom. Police found the shotgun leaning against a wall in the bedroom's southwest corner. They found the cocaine in a measuring cup sitting on a bedroom closet shelf. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 13-15).
Appellant was charged with offenses relating to the arson fires, possession of a controlled substance and unlawful possession of dangerous ordnance. The trial court severed the arson case from the possession charges. Prior to trial on the possession matters, Appellant sought to suppress the use of the shotgun and cocaine as evidence. Appellant argued that the seizure of these items were improper because it exceeded both the scope of the warrant and any consent to search given by Appellant's mother.
At the hearing on Appellant's motion to suppress, Chief Clark testified that he was present when his officers found the shotgun. According to Clark, when they saw the shotgun, "it was obvious that its length was less than the eighteen-inch barrel length, or the twenty-six overall length," required of such a weapon by law. (March 28, 2001, Hearing on Motion to Suppress, Tr. p. 14). Clark then measured the length of the barrel to make sure, and, after inventorying the gun, left the scene to review his statute book in order to confirm his suspicion that the barrel length violated the statutory requirements. He then returned to the Appellant's residence and seized the weapon. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 17-18).
Appellant's mother, Lana Simpson, also testified at the hearing. She stated that when the officers found the weapon, she was made aware that they were not sure whether the length of the barrel violated the statute. Mrs. Simpson testified that she told the officers the gun had been a gift to her husband from an uncle who had since passed away and asked them not to take it. Nevertheless, according to Mrs. Simpson, the officers decided to take the gun with them even though they were not sure that the barrel's length was illegal. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 25-26).
At the hearing's conclusion, the trial court ruled that the items had been found in plain view in locations where police were reasonably expected to find materials related to the arson. The court also found that it was immediately apparent to the officers that the gun violated the statute and refused to exclude it. Nevertheless, the trial court suppressed the cocaine, ruling that its criminal nature was not immediately obvious when the officers found it.
The matter proceeded to a jury trial on the unlawful possession of a dangerous ordnance charge, alone. The prosecution called two of the East Palestine Police Department's officers involved in the search, who testified about their discovery of a sawed-off shotgun in Appellant's attic bedroom. (Tr. p. 206). During the search of that bedroom, police noted a gun cabinet containing several rifles, as well as some firearm cleaning equipment, a scope and some shells on a table near the bed. (Tr. p. 206). Ultimately, however, their attention was drawn to the antique shotgun because the barrel appeared to be too short. (Tr. p. 207).
Chief Clark measured the barrel and found that it was fifteen and three-quarter inches long. (Tr. p. 209). Clark was told that the gun belonged to Appellant's father, Paul Simpson. (Tr. pp. 214, 224). Mr. Simpson testified that the gun had been given to him as a youngster for small game hunting. (Tr. p. 249). According to Mr. Simpson, the gun's barrel was originally about six inches longer, but five years ago it misfired and Appellant filed off the barrel at the point where it had been damaged and painted it black. (Tr. p. 252). Mr. Simpson testified that he and his son used the shotgun in its altered condition. (Tr. pp. 254-255).
The defense rested without putting on any evidence. The jury returned a verdict finding Appellant guilty of unlawful possession of a dangerous ordnance, a felony of the fifth degree. (Tr. p. 314). On May 3, 2001, the trial court sentenced Appellant to a term of eight months of incarceration with credit for one hundred and three days already served. A timely notice of appeal from that judgment was filed on May 30, 2001.
In his first and second assignments of error, Appellant argues,
"The Court erred by not suppressing the shotgun discovered at theSimpson residence when the State failed to present the testimony of thediscovering officer(s) as to the nature of the discovery.
"The Court erred in finding that the incriminating nature of theshotgun evidence was immediately apparent to the seizing authority."
Appellant's first two assignments of error both challenge the trial court's findings with respect to his motion to suppress. Thus, we will address these as though combined into a single issue. After reviewing the record in this case, this Court concludes that the trial court's decision in this matter was not erroneous.
In a motion to suppress, the trial court assumes the role of the trier of fact and, in that capacity, is better placed to resolve questions of fact and evaluate the credibility of the witnesses. State v. Clay
(1972), 34 Ohio St.2d 250. When this Court reviews the trial court's ruling on such a motion, it is bound by the trial court's findings of fact if they are supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Accepting those facts as true, this Court independently determines questions of law arising therefrom under a de novo standard, without deference to the trial court's conclusion. State v. Curry (1994), 95 Ohio App.3d 93, 96.
At the outset, Appellant argues that suppression was warranted in this case because the prosecution relied entirely on the testimony of Chief Clark, who did not actually discover the weapon. This argument is not only meritless, it is also somewhat misleading. Although Chief Clark was not the officer to actually discover the shotgun, the record reflects that he was present in Appellant's bedroom at the moment the item was seized. (March 28, 2001, Hearing on Motion to Suppress, Tr. pp. 13-14, 16-17). Under the circumstances, Chief Clark was competent to testify concerning his observations about the seizure of the shotgun.
The Fourth Amendment proscribes all unreasonable searches and seizures. The search at issue in this case was undertaken pursuant to a warrant. Since general searches are impermissible under the Constitution, a search warrant must describe with particularity the items sought. The warrant police used in the instant case specified the recovery of evidence related to the crime of arson. Since the shotgun the police seized is not, at least in conventional sense, deemed an instrumentality of the crime of arson, its seizure exceeded the scope of the warrant.
There are, however, a number of exceptions to the warrant requirement which may defeat a motion to suppress. During the hearing on Appellant's motion, Appellee argued that two such exceptions applied in this case. First, the police had secured Appellant's mother's consent to undertake a search of the entire premises. Second, even though the items seized were not sought under the warrant, they were still admissible in light of the plain view doctrine.
With respect to Mrs. Simpson's consent, the trial court correctly concluded the scope of that consent did not exceed the scope of the warrant. Given the testimony elicited at the hearing, it seems clear that Mrs. Simpson only gave police permission to search the house for goods that could have been used in the arson fires for which the police had just arrested her son. (March 28, 2001, Hearing on Motion to Suppress, Tr. p. 20). Accordingly, Mrs. Simpson's consent did not broaden the scope of the search beyond the evidence sought in the warrant.
We must next consider whether the police properly discovered the shotgun in plain view. An exception to the warrant requirement, the plain view doctrine recognizes that police do not need a search warrant to seize incriminating evidence discovered in plain sight during a lawful search. Horton v. California (1990), 496 U.S. 128, 136; and State v.Williams (1978), 55 Ohio St.2d 82, 84.
The police may properly seize evidence under the plain view doctrine if they can show: (1) that the initial intrusion affording authorities the plain view opportunity was lawful, and (2) that the incriminating nature of the evidence was immediately apparent to the seizing authorities.State v. Waddy (1992), 63 Ohio St.3d 424, 442. In short, this doctrine allows law enforcement officers to seize incriminating evidence or contraband when they discover it in plain sight in a place where they have a right to be. Coolidge v. New Hampshire (1971), 403 U.S. 443, 466.
Since the officers in the instant case were inside Appellant's residence pursuant to a valid warrant, they were lawfully on the premises in accordance with the first prong of the plain view test. Police could reasonably expect to find flammable substances and other items relating to arson in any room of the house. Their presence, then, in Appellant's bedroom where the shotgun sat leaning against a bookcase was lawful. A lawful search of a fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. United States v. Ross (1982), 456 U.S. 798,820-821.
The seizure of the sawed-off shotgun also met the second prong of the plain view test, requiring that its criminal nature be immediately apparent to the officers. Of course, a shotgun is not contraband per se.State v. Koren (1995), 100 Ohio App.3d 358, 363. According to Appellant, the criminal nature of the shotgun could not have been immediately apparent to police because they had to pick it up, measure it and double check the measurements with the statute to determine that it was, in fact, contraband.
In Arizona v. Hicks (1987), 480 U.S. 321, the United States Supreme Court held that in determining whether the criminal nature of an item is "immediately apparent" for purposes of exempting the item under the plain view exception, the officers must have probable cause to believe the item is contraband. Id. at 327. Merely suspecting that an item is contraband is not enough. Id., see accord, State v. Powell (Dec. 15, 2000), Montgomery App. No. 18095 unreported, at p. 10.
Accordingly, in Hicks, supra, the Court held that the criminal nature of stolen stereo equipment discovered by police after they lawfully entered the apartment where the equipment was stored was not immediately apparent where the officers had to first move the equipment to read and record its serial numbers. The court noted that to find otherwise would, ". . . cut the plain view doctrine loose from its theoretical and practical moorings." Id. at 326.
Likewise, in State v. Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus, Ohio's Supreme Court found that, "[t]he `immediately apparent' requirement of the `plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." See also, United States v. Rutkowski (1st Cir. 1989), 877 F.2d 139, 142 (the officers' discovery of the object must so galvanize their knowledge that they can be said to have probable cause to believe the object is contraband at the moment of its discovery or soon afterward).
Probable cause, however, is a flexible, common-sense standard. Texasv. Brown (1983), 460 U.S. 730, 740-744. It merely requires that the facts available to the officer would cause a man of reasonable caution to believe that certain items may be contraband. Id. at 740. Probable cause to associate an object with criminal activity does not require certainty in the minds of police, but instead amounts to, "a fair probability," that the object they see is illegal contraband or evidence of a crime.State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.
Nor does probable cause require a showing that such a belief is absolutely correct or more likely true than false. State v. Paschal
(August 2, 1996), Montgomery App. No. 15394; citing, Brinegar v.United States (1949), 338 U.S. 160, 176. In ascertaining whether probable cause exists, police officers may also rely on their specialized knowledge, training and experience. Halczyszak, supra, at 4 of syllabus. As the court noted in State v. Paschal, supra,
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.,supra; citing, United States v. Cortez (1981), 449 U.S. 411, 418.
In this case, Chief Clark testified that based on his professional experience, it was obvious to him that the shotgun's barrel was too short. His subsequent actions served only to double check that his observations or suspicions were correct. His suspicions were confirmed when measurement revealed that the shotgun's barrel was almost three inches shorter than the law allows. (Tr. p. 209).
This case is similar in many respects to State v. Durham (June 22, 2001), Montgomery App. No. 18586. There, the court held that it was not improper to measure a shotgun to determine whether it was "sawed-off" (and therefore contraband) prior to seizing it under the plain view exception to the warrant requirement. Id. at p. 4. The officers inDurham arrived at the defendant's house when his burglar alarm sounded. Upon arrival, police found a door smashed in so they entered to look for intruders. Inside, behind a bedroom door, an officer found a shotgun that looked, "shorter than it was supposed to be." Id. at p. 3. There was a delay while the police waited for an evidence crew to arrive. The crew then measured the barrel and found that it was sixteen and one half inches long, making it one and one half inches shorter than that allowed by law.
The defendant in Durham was charged with unlawful possession of dangerous ordnance. As did our present Appellant, he moved to suppress the weapon as improperly seized. The trial court denied the motion and its findings were affirmed on appeal. The court of appeals noted that while the officer who found the gun was not certain absent the measurements that were taken, the gun immediately appeared to be illegal to police because it was shorter than it should have been. Id. at p. 4. According to the court, the officer's recovery of the item, coupled with his suspicions about it, sufficiently demonstrated that the object was "immediately incriminating," thereby justifying its seizure under the plain view exception to the warrant requirement.
We note that at least one court has found, "a sawed-off shotgun in private hands is not an intrinsically innocent object. The possession of it is a serious crime * * * There is very little legitimate use for such a weapon." United States v. Truitt (6th Cir. 1975), 521 F.2d 1174,1177. Given the present facts and the relevant caselaw, this Court holds that Appellant's motion to suppress the sawed-off shotgun was properly denied.
In his third, fourth and fifth assignments of error, Appellant claims:
"The court erred in allowing into evidence the shotgun over objectionof the Defendant-Appellant.
"Mr. Simpson's due process rights under Article I, Section 16 of theOhio Constitution and the Fourteenth Amendment to the United StatesConstitution were violated and he was improperly denied a Crim.R. 29acquittal when his conviction for possession of a dangerous evidence(sic) was not supported by sufficient evidence.
"The jury's verdict and Defendant-Appellant's conviction are againstthe manifest weight of the evidence."
Since Appellant's third, fourth and fifth assignments of error challenge the weight and sufficiency of the evidence presented against him at trial, they are logically addressed at the same time. As set forth fully below, these assignments of error are without merit and the decision of the trial court must be affirmed.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court distinguished between the two distinct legal standards regarding the sufficiency of evidence versus the weight of the evidence. Sufficiency, the Court concluded, "is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law." Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433, and Crim.R. 29(A). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id., citing State v. Robinson (1955), 162 Ohio St. 486.
In determining the sufficiency of the evidence at trial, the reviewing court must examine all probative evidence and draw all reasonable inferences from it in a light most favorable to the prosecution. The court of appeals must then ascertain whether any rational trial of fact could have found that all the elements of the crime as charged was proven beyond a reasonable doubt. State v. Reed (1988), 128 Ohio App.3d 520,522.
A decision regarding the manifest weight of the evidence, on the other hand, involves the greater amount of credible evidence offered in a trial and whether it tends to support one side of the issue rather than the other. It provides the indication to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence, the jury finds that the greater amount of credible evidence sustains the issue which must be established. State v. Thompkins (1997),78 Ohio St.3d 380 at 387, quoting Black's Law Dictionary, 1594.
A review of this issue on appeal, however, imposes a different obligation on an appellate court. Under Thompkins, even though a court of review may find that a trial court's decision is sustained by sufficient evidence, it may, nonetheless, conclude that the decision was against the manifest weight of the evidence and remand for a new trial. Id. at 387.
To determine whether the prosecution's case was contrary to the manifest weight of the evidence, this Court must review the entire record, reweigh the evidence and all reasonable inferences, consider the credibility of witnesses, and resolve conflicts in the evidence. Such determinations place the court of appeals in the uncomfortable position of "thirteen juror" especially when it reexamines a trial court's credibility determinations.
The authority to reverse and remand a conviction as contrary to the manifest weight of the evidence is to be exercised only in an exceptional case, where the record demonstrates that the evidence weighs heavily against conviction and the jury clearly lost its way, creating a miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380 at 387; accord, State v. Layne (March 1, 2000), Mahoning App. No. 97 CA 172, unreported.
While the evidence of guilt in this case (specifically, the evidence tending to prove that the gun was presently operable) is not overwhelming, when viewed in a light most favorable to the prosecution it does sufficiently demonstrate all the elements of the offense of unlawful possession of a dangerous ordnance beyond a reasonable doubt.
R.C. § 2923.17(A), unlawful possession of dangerous ordnance, provides that, "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." A sawed-off shotgun, described under R.C. § 2923.11(F) as, "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall," is a dangerous ordnance. See R.C. § 2923.11(K)(1).
To sustain a conviction for this offense, the prosecution must show that the ordnance at issue was operable or readily capable of being made operable at the time of the offense. State v. Gaines (1989),46 Ohio St.3d 65, 69. Appellant contends that the prosecution failed to demonstrate that the gun in question was operable at the time it was seized by police. In fact, Appellant maintains, the only evidence presented at trial demonstrated that the weapon had been "sealed shut" and was therefore inoperable. (Tr. p. 216).
In determining whether a weapon is operable, the trier of fact may rely upon circumstantial evidence and, given the totality of the circumstances, "the state must present evidence beyond a reasonable doubt that the firearm was operable, or could readily have been rendered operable, at the time of the offense." State v. Murphy (1990),49 Ohio St.3d 206, 208-209. Such evidence may consist of, "testimony of lay witnesses who are in a position to observe the instrument and the circumstances surrounding the crime." Id. at 209. For example, inMurphy, witnesses testified that the defendant brandished a gun and threatened to kill them during a robbery. The Court concluded that such testimony sufficiently demonstrated that the weapon involved was operable at the time. Id. at 208.
In the instant case, Appellant's father, to whom the shotgun had originally belonged, testified that he had used the weapon in its sawed-off condition three years ago. (Tr. p. 255). Appellant's father also testified that he surmised Appellant had used the gun recently because he had seen the type of shells used in the weapon out of their storage space. (Tr. p. 255).
Finally, although Chief Clark acknowledged that when police found the weapon its barrel had been sealed shut with paint used to darken the barrel, he also stated that he had been able to loosen up the barrel with pliers, thus rendering it operable in his opinion. (Tr. p. 216). Given the totality of the circumstances, the record demonstrates that the shotgun was operable as contemplated under R.C. § 2923.11(B)(1). See alsoState v. Hunter (Sept. 30, 1991), Seneca App. No. 13-90-27, unreported, (a .22 caliber derringer, with a broken hammer spring, could be rendered operable with a rubber band); and State v. May (Jan. 18, 1995), Washington App. No. 93 CA 23, unreported, (a shotgun with empty shell lodged in its barrel could be rendered operable where a police officer testified that he had been able to remove the casing, though not without difficulty).
Appellant also complains that the prosecution failed to demonstrate that he was in possession of the weapon at the time of the offense. To convict Appellant of unlawfully possessing the dangerous ordnance, the prosecution must prove that Appellant acquired, had, carried, or used the sawed-off shotgun. "In order to `have' a firearm, one must either actually or constructively possess it". State v. Moncrief (1980),69 Ohio App.2d 51, 60.
Actual possession requires ownership or physical control. State v.Messer (1995), 107 Ohio App.3d 51, 56. Constructive possession means immediate access to the weapon. State v. Butler (1989), 42 Ohio St.3d 174,176. Typically, the doctrine of constructive possession applies in criminal cases when a weapon or other contraband is found within or on an item belonging to the alleged suspect in a place where he is able and likely to exercise control over the contraband. See, e.g., State v.Pruitt (1984), 18 Ohio App.3d 50, 480 N.E.2d 499 (controlled substance found within one foot of defendant and in a form ready for injection).
In the case at bar the record contains both direct and circumstantial evidence that Appellant had constructive possession of the weapon. First, police found the weapon in an easily accessed location in Appellant's bedroom. Testimony was given that Appellant had shortened the barrel after it accidently misfired while he was cleaning it some years ago. Additionally, Appellant's father testified that it was Appellant who painted the shotgun's barrel black. Such testimony is sufficient to demonstrate that Appellant exercised dominion and control over the shotgun. Thus, Appellant possessed the shotgun. State v. DeLeon (1991),76 Ohio App.3d 68 and State v. Pearson (Jan. 23, 1986), Cuyahoga App. No. 50009, unreported.
In light of the foregoing, Appellant's challenge to both the weight and sufficiency of the evidence against him must fail. The prosecution provided evidence as to each element of the crime which Appellant was charged. Further, while Appellant relies on his own interpretation of the evidence and its credibility, we cannot say that the trial court clearly lost its way. In fact, there is an abundance of evidence on which, if believed, the court could have based its conviction.
In his sixth and seventh assignments of error, Appellant contends the following:
"The Court erred in sentencing Defendant-Appellant to a prison term.
"The Court abused its discretion in sentencing the Defendant-Appellantto a term of greater than six months pursuant to 2929.14."
Appellant's sixth and seventh assignments of error address sentencing concerns and will be addressed jointly. As detailed below, Appellant's sentencing challenge is also meritless.
R.C. § 2953.08(G) governs the scope of appellate review and provides that a court reviewing the appeal of a felony sentence may modify the sentence or elect to vacate it and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds, "(a) That the record does not support the sentence; [or] * * * (d) That the sentence is otherwise contrary to law." State v. Roth (1999),133 Ohio App.3d 578, 581; R.C. § 2953.08(G)(1)(a) (d).
In determining the appropriate sentence to impose in a felony case, the trial court must take into account the overriding purposes of felony sentencing. Those purposes are twofold: punishing the offender and protecting the public from future crimes. R.C. § 2929.11(A). To achieve those interests, the sentencing court must, "* * * consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. § 2929.11(A). Furthermore, "[a] sentence imposed for a felony shall be * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim * * *." R.C. § 2929.11(B).
Appellant maintains that since he was convicted of a fifth degree felony, the trial court should have imposed some form of community control sanction. He claims that absent specific findings to justify the imposition of a prison term, a community control sanction was warranted.
Ohio's felony sentencing guidelines highlight two sets of factors that must be considered in a sentencing determination: seriousness factors and those relating to recidivism. The court may also consider any other relevant factors to the extent they help achieve the overriding purposes and principles of felony sentencing. R.C. § 2929.12(A); Roth, supra,
at 581-582.
The seriousness factors enumerated in R.C. § 2929.12 take one of two forms: factors that make an offense more serious than conduct normally constituting the offense and those that tend to make an offense less serious than conduct normally constituting the offense. The factors that make an offense more serious are enumerated under R.C. §2929.12(B). They are:
"(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
"(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
"(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
"(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
"(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
"(6) The offender's relationship with the victim facilitated the offense.
"(7) The offender committed the offense for hire or as a part of an organized criminal activity.
"(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion."
The factors that make an offense less serious are enumerated under R.C. § 2929.12(C). They are:
"(1) The victim induced or facilitated the offense.
"(2) In committing the offense, the offender acted under strong provocation.
"(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
"(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
Factors relating to the likelihood of recidivism are enumerated under R.C. § 2929.12(D). They are:
"(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, * * * or under post-release control * * * for an earlier offense.
"(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
"(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
"(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
"(5) The offender shows no genuine remorse for the offense."
Factors indicating that recidivism is not likely are enumerated under R.C. § 2929.12(E). They are:
"(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
"(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
"(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
"(4) The offense was committed under circumstances not likely to recur.
"(5) The offender shows genuine remorse for the offense."
For offenders who have never served a prison sentence, there is a presumption under R.C. § 2929.14(B) favoring the imposition of the shortest prison term authorized. During Appellant's sentencing hearing, however, the trial court made the following findings:
"* * * based on the presentence report I find that the Defendant is not amenable to community control, first of all because of the lengthy history of other misdemeanor offenses, for which he was placed on probation, or some kind of community sanction and did not abide by that community sanction." (Sentencing, Tr. p. 6).
In its judgment entry reflecting the sentencing decision, the trial court amplified on those findings, adding that, "the Defendant has a history of juvenile convictions, a history of alcohol abuse and misdemeanor offenses." Therefore, the court concluded, Appellant is not an appropriate candidate for community control and imposed a sentence of six months. (Judgment Entry, May 7, 2001).
It is not necessary for a trial court to make specific findings as to the factors it considered when imposing sentence upon a defendant. Statev. Arnett (2000), 88 Ohio St.3d 208, 215. A trial court satisfies its duty, "* * * with nothing more than a rote recitation * * *," that the court considered the applicable factors. Id. In the matter at bar, the trial court did make reasonably specific findings. These findings exceed the legal requirements. We hold that the record fully supports the trial court's sentencing decision.
Since we must overrule all of Appellant's assignments of error, this Court hereby affirms the judgment entered by the Columbiana County Court of Common Pleas.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.