JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
In the case numbered B-0300656, defendant-appellant Darryl Allen was charged in a sixteen-count indictment with eight counts of aggravated robbery with specifications and eight counts of robbery. The crimes were committed on either November 15, December 15, December 23, or December 29, 2002. There were multiple victims: DK Market Deli, Din Fakhar Mughal, The Stor-Dor Beverage Service, Bruce Hust, DD Mart, Sarvar Khan, Chevron Gas Station/Mini Mart, Wude Kebede, and Aynaka Feysa. In the case numbered B-0301310, Allen was charged with four crimes, all of which were allegedly committed on January 9, 2003: the aggravated robbery, with specifications, robbery, and felonious assault, with specifications, of Cheryl Clevenger, and the robbery of Mary Smith.
The indictments were joined for a jury trial. In the case numbered B-0300656, Allen was convicted of the aggravated robbery and robbery of Bruce Hust. With respect to the two associated firearm specifications, Allen was acquitted of one and the other was dismissed. Pursuant to a plea bargain, Allen had previously entered guilty pleas to the other aggravated-robbery charges, but the associated specifications were dismissed, and the other robbery charges were dismissed as well. In the case numbered B-0301320, Allen was convicted of all counts against Clevenger and Smith, but he was either acquitted of the associated specifications or they were dismissed. On appeal, Allen now raises seven assignments of error that will be addressed out of turn.
In the first assignment of error, Allen contends that the trial court erred by granting the state's motion to consolidate the charges. Pursuant to Crim.R. 13, a court may order two or more indictments tried together if the offenses could have been joined in a single indictment.[1] Joinder and the avoidance of multiple trials are favored for many reasons, one being to conserve judicial resources.[2] But if a defendant would be prejudiced by the joinder of offenses at a single trial, the court must order separate trials for the counts.[3] To prevail on his claim that the trial court erred in denying his motion to sever, Allen must affirmatively demonstrate (1) that his rights were prejudiced; (2) that, at the time of the motion, he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against his right to a fair trial; and (3) that, given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.[4] The mere possibility that Allen might have had a better choice of trial tactics if the counts had been separated, or the mere possibility that he might have desired to testify on one count and not on another was not sufficient to give rise to prejudice.[5] When a defendant claims prejudice by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts are severed; and (2) if not, whether the evidence of each crime is separate and distinct.[6] The state can defeat a defendant's claim of prejudice by showing either (1) that the evidence for each count will be admissible in a trial of the other counts under Evid.R. 404(B), or (2) that the evidence for each count is sufficiently separate and distinct so as not to lead the jury into treating it as evidence for another.[7] Additionally, we have held that a defendant who has moved for severance before trial must renew the motion at the close of the evidence to preserve the issue for appeal,[8] and that a failure to do so results only in plain error.[9] In the case sub judice, the record shows that Allen's motion was not renewed at the proper time.
Prior to trial, argument was heard by the court on the state's motion for joinder. The court learned that the crimes against Hust were committed at his office, and because he was an attorney, the jury might be affected by his testimony in considering the other crimes committed against the women victims on the street. In granting the state's motion to join, however, the court noted that there were three different victims, that the crimes had occurred over a short span of time and in geographic proximity to one another, and that a jury would have little difficulty in sorting the facts pertinent to each crime. We agree. Moreover, because Allen failed to renew his motion before the case was submitted, we are not persuaded that this is the exceptional case where plain error has determined the outcome of the trial and resulted in a miscarriage of justice.[10]
And even if the motion had been renewed, we cannot say that the trial court would have abused its discretion in permitting joinder. Allen's identity as the perpetrator was at issue so that other-act evidence that he had committed similar crimes near the time of each offense would have been probative of identity. In addition, evidence for each offense was easy to separate and to consider independently.[11] Accordingly, Allen's first assignment of error is overruled.
In Allen's second assignment of error, he contends that the trial court erred in denying his Crim.R. 29 motions for acquittal on the firearm specifications prior to closing argument. In Allen's fourth assignment of error, he contends that the trial court erred in overruling his Crim.R. 29(C) motion for acquittal. In the fifth assignment of error, Allen contends that there was insufficient evidence to support his conviction. In Allen's sixth assignment of error, he contends that his conviction was against the manifest weight of the evidence. Because these assignments are interrelated, we address them together.
A claim of insufficiency of the evidence argues a total failure of proof as to at least one of the elements of the charged offense.[12] When addressing a sufficiency claim, a reviewing court must examine the evidence presented at trial and determine whether the evidence, viewed in a light most favorable to the state, could have convinced any rational trier of fact of the defendant's guilt beyond a reasonable doubt.[13] When reviewing a challenge to the trial court's denial of a Crim.R. 29 motion, an appellate court is required to determine whether the evidence was such that reasonable minds could have reached different conclusions as to whether the state had proved each material element of the offense beyond a reasonable doubt.[14] When reviewing a defendant's claims that his conviction was against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[15]
Aggravated robbery pursuant to R.C. 2911.01(A)(1) is defined in this manner: "(A) No person, in attempting or committing a theft offense * * * shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Robbery pursuant to R.C.2911.02(A)(2) has these elements: "(A) No person, in attempting or committing a theft offense * * * shall do any of the following * * * (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another." Felonious assault under R.C.2903.11(A)(2) is given this definition: "(A) No person shall knowingly do * * * the following: * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
To establish a firearm specification, the state is required to prove that the offender possessed a weapon that was capable of firing a projectile by means of an explosive or combustible propellant, and that was operable or could readily have been rendered operable at the time of the offense.[16] Under R.C. 2923.11(B)(2), in determining whether a weapon is capable of expelling a projectile, the trier of fact may rely on circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm. We have already held that a victim's belief that a weapon is a gun, together with the intent of the defendant to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification.[17]
In State v. Knight, the Second Appellate District noted that "there may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and he could use it if the victim fails to comply with his instructions."[18] Such was the case in Knight the court reasoned because the victim believed that the defendant possessed a gun based on his actions alone, thus giving him access to the cash register even though the defendant had made no verbal threat indicating the presence of a gun or its operability, and no gun was displayed during the robbery.[19] The victim thought the shape in the defendant's pocket looked like a small gun.[20] Construing the evidence in the light most favorable to the state, the Second Appellate District concluded that the state's evidence regarding a deadly weapon was legally sufficient to support the jury's verdict.[21]
In the case sub judice, the state's evidence concerning the firearm specification was legally sufficient to permit the issue to be resolved by the jury. Clevenger testified that on January 9, 2003, after she had walked away from her parked car, Allen grabbed her purse and ordered her to give it to him. She testified that Allen pulled out a gun that she thought was real after she started screaming. He then hit her on the head with it once, then several more times, until she finally let go of her purse. Hust testified that on December 23, 2002, while in his office, he was confronted by Allen and ordered to hand over his wallet, which he did. Hust testified that Allen was holding what appeared to be a real, black semiautomatic handgun at the time. Being in the Naval Reserve, Hust was familiar with weapons. On this record, there was legally sufficient evidence to permit the jury to consider the firearm specification. Accordingly, we overrule the second assignment of error.
With regard to the robbery of Smith, she testified that on January 9, 2003, she had a bank envelope in her hand with $206 in it when she asked Allen for directions. She told Allen that she had to pay a fine. She followed him, but where they stopped was not where the fine had to be paid. Smith then turned to walk away, but Allen followed her. Allen then grabbed the envelope from her hand Smith unsuccessfully tried to hold onto Allen's coat. She cut her finger in her attempt to regain control of the envelope. Clevenger, Hust, and Smith all identified Allen as the perpetrator. Items belonging to Hust were later discovered in the trunk of Allen's car pursuant to a search by police.
Allen argues that he should have been acquitted due to an inconsistency in the verdicts: he was found guilty of aggravated robbery and felonious assault, but not of the associated firearm specifications. Other Ohio appellate courts have already considered this issue and have sustained convictions for aggravated robbery in the absence of a conviction on an accompanying firearm specification conviction.[22]
On this record, we hold that the evidence presented by the state was sufficient as a matter of law, that the weight of the evidence supported the guilty verdicts, and that the trial court correctly overruled Allen's motions for acquittal pursuant to Crim.R. 29. Accordingly, we overrule the fourth, fifth, and six assignments of error.
In the third assignment of error, Allen contends that the state's closing argument was "replete with prosecutorial misconduct." The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights.[23] The prosecutor's closing argument must be reviewed in its entirety to determine if any remarks were prejudicial.[24] In the case sub judice, we find no prejudicial error. In the context of the entire proceedings, the remarks were inconsequential when the jury was properly instructed on the state's burden of proof. Under these circumstances, we cannot say that Allen was deprived of a fair trial. Accordingly, the third assignment of error is overruled.
In the seventh assignment of error, Allen contends that the trial court erred when it amended Allen's indictment after the jury had returned its verdicts, changing the identity of the offenses in contravention of Crim.R. 7(C) and 7(D). Subsequent to trial, upon motion by the state, the trial court struck as surplusage the phrase "to wit: a firearm" from the charges of aggravated robbery and felonious assault. Allen was either acquitted by the jury of the firearm specifications or they were dismissed. Crim.R. 7(D) allows amendments to indictments subsequent to trial as long as the name and identity of the offense remains the same.[25] In the case sub judice, neither the identity of the crimes nor the level of the offenses was changed by the trial court when it deleted the language Allen complains of. Allen cannot claim prejudice because the original indictment contained all the essential elements of the crimes for which Allen was convicted. Additionally, in reviewing the jury instructions, we note that the jury was indisputably charged on all the essential elements of the crimes, including separate firearm and deadly-weapon definitions. Moreover, Crim.R.7(C) permits surplusage to be stricken from an indictment.[26]
Accordingly, because Allen was not misled or prejudiced by the change in the indictment subsequent to trial, we overrule the seventh assignment of error.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Winkler, P.J., Doan and Painter, JJ.
[1] See, also, R.C. 2941.04.
[2] See State v. Hubbard, 8th Dist. No. 83384, 2004-Ohio-4627, at ¶ 10; State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288.
[3] See Crim.R. 14.
[4] See id. at syllabus.
[5] See id. at 344.
[6] See State v. Schaim, 65 Ohio St.3d 51, 1992-Ohio-31,600 N.E.2d 661.
[7] See State v. Echols (1998), 128 Ohio App.3d 677, 692,716 N.E.2d 728.
[8] See State v. Echols (2001), 146 Ohio App.3d 81, 88,765 N.E.2d 379.
[9] See State v. Bennie, 1st Dist. No. C-020497, 2004-Ohio-1264, at ¶ 21.
[10] See State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus.
[11] See State v. Bennie, 1st Dist. No. C-020497, 2004-Ohio-1264, at ¶¶ 24-26.
[12] State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[13] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[14] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[15] Thompkins, supra, at 387; State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[16] See State v. Jeffers (2001), 143 Ohio App.3d 91, 94,757 N.E.2d 417, discretionary appeal not allowed, 93 Ohio St.3d 1414,754 N.E.2d 260.
[17] See id. at 94-95.
[18] See State v. Knight, 2nd Dist. No. 2003 CA 14, 2004-Ohio-1941, at ¶ 19.
[19] See id. at ¶ 20.
[20] See id. at ¶ 27.
[21] See id. at ¶ 29.
[22] See State v. Sanders (Apr. 13, 2000), 8th Dist No. 75398, discretionary appeal not allowed, (2000) 90 Ohio St.3d 1415,735 N.E.2d 454; State v. Mays (Sept. 13, 2001), 8th Dist. No. 78619; State v. Koren (1995), 100 Ohio App.3d 358, 366,654 N.E.2d 131; see, also, State v. Moses (June 25, 2002), 5th Dist. No. 01CA104.
[23] See State v. Smith, 87 Ohio St.3d 424, 2000-Ohio-450,721 N.E.2d 93; State v. Lott (1990), 51 Ohio St.3d 160,555 N.E.2d 293.
[24] See State v. Keenan (1993), 66 Ohio St.3d 402,613 N.E.2d 203.
[25] See State v. Bush (1996), 83 Ohio Misc.2d 61, 63,679 N.E.2d 747; see, generally, State v. O'Brien (1987),30 Ohio St.3d 122, 508 N.E.2d 144 (an indictment that does not contain all the essential elements of an offense may be amended to include the omitted element; if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of elements from the indictment).
[26] See Bush at 65, 679 N.E.2d 747.